IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PETER A. CALDERONE,            *

      Plaintiff,           *

                                Civil No. L-06-2469

v.                              *

ARTHUR F. JACOB, et al.,        *

      Defendants.         *

******

**MEMORANDUM**

This is a diversity suit. Peter Calderone is an investor in Xanhajoy, Limited ("Xanhajoy"), a Cayman Island corporation that owns a condominium in the Cayman Islands. Alleging fraud, conversion and breach of contract, Calderone filed the instant suit against Xanhajoy and Arthur Jacob, a director. Now pending are the following motions:

    (i)    Calderone's Motion for Leave to File an Amended Complaint;
    (ii)   Defendants' Joint Motion to Strike Amended Complaint; and
    (iii)  Defendants' Joint Motion to Dismiss, or, in the Alternative, for Summary Judgment.

The issues have been fully briefed and no hearing is necessary. See Local Rule 105.6. The relevant contract documents contain forum selection clauses providing that all disputes shall be brought solely and exclusively before the Courts of the Cayman Islands. Because these clauses are enforceable, the Complaint must be dismissed, albeit without prejudice. Accordingly, the Court will, by separate order, (i) deny Calderone's Motion for Leave to File an Amended Complaint, (ii) grant Defendants' Joint Motion to Strike Amended Complaint, and (iii) grant Defendants' Joint Motion to Dismiss, or, in the Alternative, for Summary Judgment.

## I. FACTUAL BACKGROUND[1]

Pursuant to a Share Agreement dated February 3, 2001, Calderone became the majority shareholder in Xanhajoy, a closely held Cayman Island corporation formed on January 19, 2001 for the purpose of purchasing, holding, and managing a condominium property located in the Britannia real estate development in Grand Cayman. Under the terms of the Share Agreement, Calderone and the other shareholders agreed to elect Jacob as one of Xanhajoy's two directors.

The Share Agreement contains two forum selection clauses. The first of these provisions directs that "[a]ny and all disputes arising from the duties of the Directors" "shall be governed by the laws of the Cayman Islands and shall be brought solely and exclusively before the Courts of the Cayman Islands." Share Agreement at 3. The second forum selection clause provides:

> [T]he Parties, Shareholders, and Directors agree that any and all disputes, claims, causes of actions, lawsuits, arbitrations, and/or any similar process(es) arising out of this Agreement, incident to this Agreement, related to this Agreement, arising out of the ownership of their share interests, incident to their share interests, related to their share interests, and by and between any of the Parties, Shareholders, and/or Directors regarding any subject or property addressed by this Agreement, including Xanhajoy and/or the Condo, shall be brought before the courts of the Cayman Islands.

---

[1] Defendants base their Joint Motion to Dismiss, or, in the Alternative, for Summary Judgment on documents that are neither referred to nor incorporated into Calderone's Complaint. Specifically, Defendants rely on forum selection clauses contained in a Share Agreement dated February 3, 2001 and a Settlement Agreement dated October 15, 2004 to argue that the courts of the Cayman Islands have exclusive jurisdiction over Calderone's claims. Although Defendants have styled their Joint Motion, in part, as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), motions to dismiss based on forum selection clauses should properly be characterized as Rule 12(b)(3) motions to dismiss on the basis of improper venue. See Sucampo Pharms., Inc. v. Astellas Pharma, Inc., 471 F.3d 544, 549-50 (4th Cir. 2006). Treating these motions as Rule 12(b)(3) motions "allows the court to freely consider evidence outside the pleadings, unlike a 12(b)(6) motion." Id. Accordingly, the facts recited herein are drawn from the parties' pleadings and attached exhibits.

2

Share Agreement at 7. Under the terms of this clause, Calderone and the other signatories to the Share Agreement "specifically agree . . . that any dispute, claim, cause of action, lawsuit, arbitration, and/or similar process brought in any court other than before the appropriate forum, as set forth herein, shall be summarily dismissed[.]" Id.

In September 2002, Calderone filed a professional malpractice lawsuit against Jacob in Baltimore County Circuit Court. The parties resolved this suit by settlement pursuant to a Release Agreement executed on October 26, 2004 (the "Release Agreement"). Although there is a dispute whether it was executed, Calderone is seeking to enforce an October 15, 2004 agreement (the "Settlement Agreement"), in which Xanhajoy agreed to redeem Calderone's interest in the condominium in exchange for Calderone's agreement to settle "any and all claims which have ever existed against Xanhajoy."[2] The document also contains a clause obligating Xanhajoy to supply Calderone with "any and all documents, papers, etc. related to and/or arising out of the assets, liabilities, income, expenses, and operation(s) of Xanhajoy, upon the written request of Calderone." Like the Share Agreement, the Settlement Agreement contains a forum selection clause providing that "any dispute hereunder shall be brought before the courts of the Cayman Islands."

---

[2] Defendants challenge the enforceability of the Settlement Agreement, contending that the unsigned document attached as Exhibit A to their Joint Motion to Dismiss was merely a "proposal" that Calderone never accepted. Calderone submitted correspondence between the parties in support of his Amended Complaint that significantly undercuts Defendants' assertion. Calderone attached a letter from counsel for the Defendants to his attorney indicating that Xanhajoy "agreed to purchase the interests of Peter and/or Maureen Calderone as set forth in the previously circulated agreement." Defendants responded by submitting a copy of the Settlement Agreement signed by both directors of Xanhajoy.
The Court need not decide this issue. Both the Share Agreement and the Settlement Agreement contain forum selection clauses requiring disputes thereunder to be brought before the Courts of the Cayman Islands. Calderone's Complaint must be dismissed under either contract.

On September 22, 2006, Calderone filed the instant action against Jacob and Xanhajoy, alleging that Jacob's failure to provide requested financial documents and information constituted fraud and a breach of contract. Specifically, Calderone's September 22, 2006 Complaint claims that Jacob, as Xanhajoy's agent, fraudulently agreed that Xanhajoy would buy out Calderone's 55% shareholder interest in Xanhajoy to induce Calderone to settle the unrelated malpractice lawsuit against Jacob. After Jacob had tricked him into settling his claims, Calderone alleges, Jacob refused to provide the financial information necessary to effect the purchase of Calderone's interest in Xanhajoy, as required by the Settlement Agreement. Calderone's Complaint also included a breach of fiduciary duty claim against Jacob, alleging that Jacob's conduct breached the duty of care he owed as a fiduciary of Xanhajoy.

On October 6, 2006, Xanhajoy filed its Answer, denying all substantive allegations relating to Xanhajoy.[3] On November 9, 2006, Xanhajoy and Jacob filed a Joint Motion to Dismiss, or, in the Alternative, for Summary Judgment (the "Joint Motion"). Defendants assert, among other arguments, that the forum selection clauses require Calderone to litigate in the Cayman Islands.[4]

On November 22, 2006, in an apparent effort to avoid dismissal, Calderone filed an Amended Complaint that seeks to add two new counts against Xanhajoy and to drop the claim

---

[3] This filing constituted a responsive pleading for the purposes of Federal Rule of Civil Procedure 7(a).

[4] Defendants also contend that Calderone fails to state his claims for fraud with the particularity required by Federal Rule of Civil Procedure 9(b), and that Calderone's claims against Jacob are precluded by the Release Agreement. Because the Court finds that the forum selection clauses in the contracts between Calderone and the Defendants operate to bar his suit in this jurisdiction, the Court need not address Defendants' remaining arguments.

against Jacob for breach of fiduciary duty.

## II. ANALYSIS

Whether Calderone may pursue his claims before this Court depends on the effect of the forum selection clauses contained in the Share Agreement and the Settlement Agreement on which his claims are based. For the following reasons, the Court concludes that these forum selection clauses are enforceable and encompass Calderone's claims.

### A. The Forum Selection Clauses in the Share Agreement and the Settlement Agreement Are Presumptively Valid

In order to test the enforceability of a forum selection clause, the Court must first decide what law applies. See Koch v. America Online, Inc., 139 F.Supp.2d 690, 692 (D. Md. 2000) ("The initial step in analyzing the validity of a forum selection clause is to determine whether state or federal law should be applied."). The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. See Notice of Removal (Docket No. 1). Courts in the Fourth Circuit apply state law to determine the enforceability of forum selection clauses in diversity cases. See, e.g., Eisaman v. Cinema Grill Sys., Inc., 87 F.Supp.2d 446, 448 (D. Md. 1999). Maryland, however, has adopted the federal standard articulated in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). See Gilman v. Wheat, First Sec., Inc., 692 A.2d 454, 463 (Md. 1997).

According to the federal standard, forum selection clauses are presumptively valid and routinely enforced. Id.; see also, Bremen, 407 U.S. at 10 (holding that forum selection clauses in international contracts are prima facie valid); Steward Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J. concurring) (stating that Bremen's "reasoning applies with much force to

federal courts sitting in diversity"); Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp., 696 F.2d 315, 317 (4th Cir. 1982) (recognizing parties' right to "agree in advance to submit controversies arising out of their contract to the jurisdiction of a given court").

This presumption of validity is especially strong in the international context in light of "concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes." In re Eternity Shipping, Ltd., Eurocarriers, S.A. for Exoneration from or Limitation of Liability, 444 F.Supp.2d 347, 378 (D. Md. 2006) (quoting Mitsubishi Motors Corp. v. Soler Chyrsler-Plymouth, Inc., 473 U.S. 614, 629 (1985)).

As a result, a party trying to defeat a mandatory forum selection clause, such as those at issue here, bears a "heavy burden." See Davis Media Group v. Best Western Int'l, Inc., 302 F.Supp.2d 464, 469-70 (D. Md. 2004). This is especially so here, where the language in the forum selection clause at issue is unambiguous and mandates that all disputes "arising out of the ownership of their share interests, incident to their share interests, related to their share interests, and . . . regarding any subject or property addressed by this Agreement, including Xanhajoy and/or the Condo, *shall* be brought before the courts of the Cayman Islands." Share Agreement at 7 (emphasis supplied).

The Supreme Court has held that such clauses "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Bremen, 407 U.S. at 10. Calderone has made no such showing here.

**B.    There Are No Grounds for Setting Aside the Forum Selection Clause**

A forum selection provision may be found unreasonable if (1) its formation was induced

by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) its enforcement would contravene a strong public policy of the forum state. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991).

Nothing in Calderone's pleadings indicates that any of these exceptions to the rule of enforcing forum selection clauses applies. Accordingly, the Court holds that the forum selection clause in the Share Agreement is enforceable.

    C.    **The Forum Selection Clauses Encompass Calderone's Claims**

The forum selection clause in the Share Agreement broadly covers any and all claims "arising out of the ownership of [the shareholders'] share interests, incident to their share interests, related to their share interests, and by and between any of the Parties, Shareholders, and/or Directors regarding any subject or property addressed by this Agreement, including Xanhajoy and/or the Condo." Share Agreement at 7. Inter alia, Calderone claims that the Defendants fraudulently refused to redeem his share interest in the condominium. His complaint, therefore, arises out of his ownership of his share interests and clearly falls within the scope of the forum selection clause.[5] Accordingly, the Court grants Defendants' Joint Motion to Dismiss.

    D.    **Calderone's Amended Complaint Does Not Cure His Claims' Deficiencies**

On November 22, 2006 Calderone filed an Amended Complaint without first seeking

---

[5] Calderone's claims that Xanhajoy and Jacob breached the Settlement Agreement likewise fall squarely within the forum selection clauses in both the Share Agreement and the Settlement Agreement. Like the Share Agreement, the Settlement Agreement provides that "any dispute hereunder shall be brought before the courts of the Cayman Islands."

leave under Federal Rule of Civil Procedure 15.<sup>8</sup> After Defendants moved to strike his Amended Complaint, Calderone sought to correct the problem by moving for leave. Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." Nevertheless, the motion should be denied if the amendment would be futile. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) ("[L]eave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.") (internal citations omitted). Like the claims Calderone originally asserted, the claims in the proposed Amended Complaint are subject to the forum selection clause. Accordingly, Calderone's motion for leave to amend his complaint is denied. See Westport Ins. Co. v. Albert, Civ. No. 04-2315, 2005 WL 1308534, at *6 (D. Md. May 31, 2005) (denying motion to amend where "Defendants' proposed amendments to their pleadings cannot change the outcome of this action.").

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, (i) GRANT Defendants' Joint Motion to Dismiss, or, in the Alternative, for Summary Judgment, (ii) GRANT Defendants' Joint Motion to Strike Amended Complaint, and (iii) DENY Calderone's Motion for Leave to File Amended Complaint.

Dated this 7th day of August, 2007.

/s/
Benson Everett Legg
Chief Judge

---

[8] Because Xanhajoy had filed an Answer, Calderone could not amend without leave of the Court. The Defendants' Joint Motion to Dismiss Calderone's November 22, 2006 Amended Complaint is, therefore, granted.